## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NICHOLAS EMERY,<br><br>        Plaintiff,<br><br>   v.<br><br>GCI LIBERTY, INC., JOHN C. MALONE, GREG B. MAFFEI, RONALD A. DUNCAN, GREGG L. ENGLES, DONNE F. FISHER, RICHARD R. GREEN, and SUE ANN HAMILTON,<br><br>        Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Nicholas Emery ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by GCI Liberty, Inc. ("GCI Liberty" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning GCI Liberty and the Defendants.

## SUMMARY OF THE ACTION

1.      This is an action brought by Plaintiff against GCI Liberty and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of the Company to Liberty Broadband Corporation ("Parent"), Grizzly Merger Sub 1, LLC ("Merger Sub 1"), and Grizzly Merger Sub 2, Inc. ("Merger Sub 2," and together with Parent and Merger Sub 1, "Liberty Broadband") (the "Proposed Transaction").

2.      On August 6, 2020, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Liberty Broadband.  Pursuant to the terms of the Merger Agreement: (i) each share of GCI Liberty Series A common stock will be converted into 0.580 shares of Parent Series C common stock; and (ii) each share of GCI Liberty Series B common stock will be converted into 0.580 shares of Parent Series B common stock. (the "Merger Consideration").

3.      On October 30, 2020, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading definitive proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against GCI Liberty and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to GCI Liberty shareholders before the vote on the Proposed Transaction or, in the event the

Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.      This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, the owner of GCI Liberty shares.

9.      Defendant GCI Liberty is incorporated under the laws of Delaware and has its principal executive offices located at 12300 Liberty Boulevard, Englewood, Colorado 80112. The Company's common stock trades on the NASDAQ Global Select Market under the symbol "GLIBA."

10.     Defendant John C. Malone ("Malone") is and has been the Chairman of the Company's Board at all times during the relevant time period.

11.     Defendant Greg B. Maffei ("Maffei") is and has been the Company's Chief Executive Officer ("CEO"), President, and member of the Board at all times during the relevant time period.

12.     Defendant Ronald A. Duncan ("Duncan") is and has been a director of GCI Liberty at all times during the relevant time period.

13.     Defendant Gregg L. Engles ("Engles") is and has been a director of GCI Liberty at all times during the relevant time period.

14.     Defendant Donne F. Fisher ("Fisher") is and has been a director of GCI Liberty at all times during the relevant time period.

15.     Defendant Richard R. Green ("Green") is and has been a director of GCI Liberty at all times during the relevant time period.

16.     Defendant Sue Ann Hamilton ("Hamilton") is and has been a director of GCI Liberty at all times during the relevant time period.

17.     Defendants Malone, Maffei, Duncan, Engles, Fisher, Green, and Hamilton are collectively referred to herein as the "Individual Defendants."

18.     The Individual Defendants, along with Defendant GCI Liberty, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

19.     GCI Liberty operates and owns interests in a broad range of communications businesses. GCI Liberty's assets consist of its subsidiary GCI Holdings, LLC ("GCI") and interests in Charter Communications, Liberty Broadband Corporation and Lending Tree. GCI is

Alaska's largest communications provider, providing data, wireless, video, voice and managed services to consumer and business customers throughout Alaska and nationwide.

### The Company Announces the Proposed Transaction

20.     On August 6, 2020, the Company jointly issued a press release announcing the Proposed Transaction.  The press release stated in part:

> ENGLEWOOD, Colo.--(BUSINESS WIRE)--Aug. 6, 2020-- Liberty Broadband Corporation ("Liberty Broadband") (NASDAQ: LBRDA, LBRDK) and GCI Liberty, Inc. ("GCI Liberty") (NASDAQ: GLIBA, GLIBP) announced today that they have entered into a definitive merger agreement under which Liberty Broadband has agreed to acquire GCI Liberty in a stock-for-stock merger (the "Combination").

> This press release features multimedia. View the full release here: https://www.businesswire.com/news/home/20200806005929/en/

> "This process was driven by independent special committees of Liberty Broadband and GCI Liberty, and John Malone and I fully endorse the combination," said Greg Maffei, Liberty Broadband and GCI Liberty President and CEO. "The transaction is financially attractive and beneficial for both companies."

> Liberty Broadband's businesses consist of its interest in Charter Communications, Inc. ("Charter") and its subsidiary Skyhook. Liberty Broadband also announced today that its Board of Directors increased its repurchase authorization by $1 billion, bringing total authorization to $1.2 billion.

> GCI Liberty's principal assets consist of its subsidiary GCI Holdings, LLC and non-controlling interests in Liberty Broadband, Charter Communications, Inc., and LendingTree, Inc.

> Liberty Broadband and GCI Liberty believe the Combination will provide the following benefits to all shareholders:

> - Generate savings on public company and overhead costs
> - Simplify administrative and management complexity
> - Aim to reduce trading discounts to underlying equities
> - Improve flexibility for future strategic combinations

> Liberty Broadband believes benefits of the Combination include:

> - Issuing Liberty Broadband equity to take advantage of the more discounted GCI Liberty equity
> - Accretive to NAV per share
> - Acquiring an attractive incremental cable asset with synergy potential

- Additional operating asset with free cash flow provides potential for incremental share repurchase
- Strengthening trading liquidity in LBRDK

GCI Liberty believes the Combination will provide the following benefits:

- Tie GCI Liberty's future to the more strategic Liberty Broadband
- Premium to the trading price
- Elimination of the "double-discount" through the LBRDK stake
- Ongoing participation in attractive Charter
- Elimination of corporate level tax on the LBRDK gain
- More liquid currency
- Larger, stronger balance sheet

Under the terms of the merger agreement:

- Each holder of GLIBA will receive 0.580 of a share of LBRDK
- Each holder of GLIBB will receive 0.580 of a share of LBRDB
- Each holder of GLIBP will receive one share of Liberty Broadband Cumulative Redeemable Preferred Stock (with mirror terms to the current GLIBP)
- Cash to be issued in lieu of fractional shares

At the closing of the Combination:

- Former holders of the GCI Liberty common stock are expected to own in the aggregate shares of LBRDK and LBRDB representing approximately 30.6% of the total number of outstanding Liberty Broadband common shares
- Former holders of GLIBP will own in the aggregate all outstanding shares of Liberty Broadband Preferred Stock newly issued in the Combination
- Former holders of GCI Liberty common stock and GLIBP are expected to own, in the aggregate, approximately 16.7% of the voting power of Liberty Broadband

The foregoing percentages are based on approximately 26.5 million shares of LBRDA, approximately 2.5 million shares of LBRDB and approximately 153.0 million shares of LBRDK outstanding as of July 15, 2020 and approximately 101.3 million shares of GLIBA and approximately 4.5 million shares of GLIBB outstanding as of April 30, 2020 and approximately 7.2 million shares of GLIBP outstanding as of March 31, 2020.

The companies expect the Combination to close in the first half of 2021, subject to potential COVID-19 related delays.

The Combination was recommended to the Liberty Broadband Board of Directors for approval by a special committee composed of independent, disinterested

directors and advised by independent financial and legal advisors. The Combination was recommended to the GCI Liberty Board of Directors for approval by a special committee composed of independent, disinterested directors and advised by independent financial and legal advisors.

The closing of the Combination is subject to certain customary conditions, including:

- Adoption of the merger agreement by:
  - Holders of a majority of the aggregate voting power of the GCI Liberty outstanding stock entitled to vote thereon
  - Holders of a majority of the aggregate voting power of the GCI Liberty outstanding stock entitled to vote thereon not owned by John C. Malone and certain other persons
  - Holders of a majority of the aggregate voting power of the Liberty Broadband outstanding stock entitled to vote thereon not owned by John C. Malone and certain other persons
- Approval of the Liberty Broadband stock issuance by holders of a majority of the aggregate voting power of the Liberty Broadband outstanding stock present in person or by proxy at the stockholder meeting and entitled to vote thereon
- The receipt of any applicable regulatory approvals

John C. Malone, the Chairman of the Board of Liberty Broadband and GCI Liberty, and certain related holders, agreed to vote shares beneficially owned by them, representing approximately 48.3% of the aggregate voting power of Liberty Broadband and approximately 27.0% of the aggregate voting power of GCI Liberty, in favor of the Combination.

In addition, Liberty Broadband entered into an exchange agreement with Mr. Malone pursuant to which he will waive the right to receive LBRDB in the Combination with respect to certain shares of GLIBB beneficially owned by him and will instead receive an equal number of LBRDK so that Mr. Malone's aggregate voting power at Liberty Broadband remains at approximately 49% at the closing of the Combination, which is equal to Mr. Malone's current voting power in Liberty Broadband. Following the closing, Mr. Malone would be able to exchange shares of LBRDK on a one-for-one basis for the waived shares of LBRDB in order to preserve his target voting power of approximately 49% (subject to adjustment for certain transfers by Mr. Malone) following the occurrence of certain voting dilution events and in certain circumstances, Mr. Malone will be required to transfer shares of LBRDB owned by him to Liberty Broadband in exchange for an equal number of shares of LBRDK in order to preserve the target voting power.

Perella Weinberg Partners LP is serving as exclusive financial advisor to the special committee of Liberty Broadband, and Evercore is serving as exclusive financial advisor to the special committee of GCI Liberty. Debevoise & Plimpton LLP is serving as legal counsel to the special committee of Liberty Broadband,

and Morris, Nichols, Arsht & Tunnell LLP is serving as legal counsel to the special committee of GCI Liberty. Steptoe & Johnson LLP is serving as independent tax counsel to the special committee of GCI Liberty, and Skadden is serving as special tax counsel to GCI Liberty. Baker Botts LLP is representing GCI Liberty in their capacity as regular outside counsel.

## FALSE AND MISLEADING STATEMENTS
## AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

21.     On October 30, 2020, the Company authorized the filing of the Proxy Statement with the SEC.  The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

22.     Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.   However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material
### Misrepresentations or Omissions Regarding the Company's Financial Projections

23.     The Proxy Statement contains projections prepared by the Company's management concerning the Proposed Transaction, but fails to provide material information concerning such.

24.     With respect to the "GCI Liberty projections," the Proxy Statement fails to disclose all line items used to calculate Adjusted EBITDA and Adjusted OIBDA.

25.     With respect to the "Skyhook standalone projections," the Proxy Statement fails to disclose all line items used to calculate Adjusted EBITDA.

26.     Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.   Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding the Financial Advisor's Opinions**

27.     The Proxy Statement contains the financial analyses and opinion of Evercore Group L.L.C. ("Evercore") and Perella Weinberg Partners LP ("Perella Weinberg") concerning the Proposed Transaction, but fails to provide material information concerning such.

28.     First, the Proxy Statement fails to disclose Evercore's "views as to certain potential alternative transactions that might be available to GCI Liberty, including a potential transaction with a strategic acquirer or other third party, and a potential sale of GCI Liberty's operating business in Alaska."

29.     The Proxy Statement fails to disclose all of Evercore's financial analyses, including the ones performed on June 17, June 23, and June 30, 2020.

30.     The Proxy Statement notes that "Evercore may, in the discretion of the GCI Liberty special committee, also receive an additional fee of up to $1 million based on, among other things, the GCI Liberty special committee's satisfaction with the services provided by Evercore and the benefit provided to GCI Liberty stockholders upon completion of the combination." However, the Proxy Statement fails to disclose whether Defendants intend to pay Evercore such additional fee.

31.     The Proxy Statement fails to disclose all of Perella Weinberg's financial analyses, including the ones performed on April 17, April 23, and June 9, 2020.

32.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

33.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

34.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

35.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

36.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange

Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

37.    Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

38.    In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

39.    The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

40.    The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the

Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

41.     The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

42.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

43.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act)

44.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45.     The Individual Defendants acted as controlling persons of GCI Liberty within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as

officers and/or directors of GCI Liberty, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

46.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

47.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

48.     In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

49.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

50.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

51.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.     Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: November 16, 2020                                    Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
821 Franklin Avenue, Suite 209
Garden City, New York 11530
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*